UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECKWITH-COHEN, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VIBRANTCARE REHABILITATION, INC., a corporation; PATSY NEUMANN; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:21-cv-01180-TLN-JDP<br><br>**ORDER** |

    This matter is before the Court on Plaintiff Carol Beckwith-Cohen's ("Plaintiff") Motion for Remand. (ECF No. 5.) Defendant VibrantCare Rehabilitation, Inc. ("Defendant") filed an opposition. (ECF No. 6.) Plaintiff filed a reply. (ECF No. 8.) For the reasons set forth below, the Court GRANTS Plaintiff's motion.

///

///

///

///

///

///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant employed Plaintiff and other individuals as physical and occupational therapists in California. (ECF No. 1 at 43.) On February 11, 2019, Plaintiff filed this putative class action in Alameda County Superior Court, alleging various state law wage and hour claims. (ECF No. 1 at 60–81.) The case was transferred to Sacramento County Superior Court, and Plaintiff filed her First Amended Complaint ("FAC") on July 6, 2021. (ECF No. 1 at 8, 94.) On July 16, 2021, Defendant removed the case to this Court under the Class Action Fairness Act ("CAFA"). (ECF No. 1.) Plaintiff moved to remand on August 5, 2021, arguing Defendant fails to show by a preponderance of the evidence that the requisite $5 million amount in controversy has been met. (ECF No. 5.)

## II. STANDARD OF LAW

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

A defendant seeking removal under CAFA must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). The notice of removal "need not contain evidentiary

1 submissions," rather a defendant's "plausible allegation that the amount in controversy exceeds
2 the jurisdictional threshold" suffices. *Id.* at 84, 89.  When "a defendant's assertion of the amount
3 in controversy is challenged . . . both sides submit proof and the court decides, by a
4 preponderance of the evidence, whether the amount-in-controversy requirement has been
5 satisfied." *Id.* at 88.  The parties may submit evidence outside the complaint including "affidavits
6 or declarations or other 'summary-judgment-type evidence relevant to the amount in controversy
7 at the time of removal.'" *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-
8 DMC, 2020 WL 5959908 *2 (E.D. Cal. Oct. 7, 2020) (citing *Singer v. State Farm Mut. Ins. Co.*,
9 116 F.3d 373, 377 (9th Cir. 1997)).
10     When "the defendant relies on a chain of reasoning that includes assumptions to satisfy its
11 burden of proof, the chain of reasoning and the underlying assumptions must be reasonable, and
12 not constitute mere speculation and conjecture." *Id.* (citing *Ibarra*, 775 F.3d at 1197–99).
13 "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is
14 at stake in the litigation, using reasonable assumptions underlying the defendant's theory of
15 damages exposure." *Ibarra*, 775 F.3d at 1198.  Then "the district court must make findings of
16 jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 574 U.S. at
17 89 (internal citation omitted).

18     **III.**     **ANALYSIS**

19     Plaintiff argues Defendant fails to show by a preponderance of the evidence that the
20 amount in controversy exceeds $5 million because Defendant's estimates are inflated,
21 unreasonable, and unsupported.  (ECF No. 5-1.)  Plaintiff also requests attorney's fees incurred in
22 bringing this motion.  (*Id.*)  The Court will address Defendant's amount in controversy estimate
23 and then Plaintiff's request for attorney's fees.

24     A.     <u>Amount in Controversy</u>

25     Defendant estimates the total amount in controversy exceeds $7,400,000 based on the
26 class claims for unpaid wages, liquidated damages, unpaid overtime, meal periods, rest periods,
27 untimely final wages, inaccurate wage statements, and statutory attorney's fees.  (ECF No. 1;
28 ECF No. 6.)  The Court will address Defendant's arguments as to those claims in turn.

                *i.*     *Unpaid Wages*

Defendant argues the amount in controversy with respect to the claims for unpaid wages is at least $1,527,000. (ECF No. 6 at 13.) Defendant contends that based on Plaintiff's allegations — "all members of the Class and Sub-Class" at all relevant times" were "systematically" forced to "consistently" work through breaks and off the clock, including on weekends, under the "same" overbooking practice — it is reasonable to apply a 100% violation rate. (*Id.* at 15.) Defendant further contends it provided sufficient evidence and reasonable calculations to support its estimate. (*Id.* at 16.) More specifically, Defendant provides a declaration from Heather Tenconi, Defendant's Director of Human Resources and Recruiting.[1] (ECF No. 6-2.) Tenconi declares that her statements are based on her personal knowledge of Defendant's business records kept in the ordinary course of business, including personnel files and payroll records. (*Id.* at 2–7.) Tenconi states Defendant's records reflect that, during the relevant period between February 11, 2015 and July 6, 2021, Defendant employed 117 occupational therapists and physical therapists. (*Id.* at 4.) Of these employees: 47 were full-time employees who worked an average of 40 hours per week over five workdays for approximately 3,102 weeks during the relevant time period with an average hourly rate of $35.63; 7 were part-time employees who worked an average of 32 hours per week composed of eight-hour days for approximately 539 weeks during the relevant time period with an average hourly rate of $40.30; and 63 were per diem employees who worked an average of 12 hours per week for approximately 4,498 weeks in the relevant time period with an average hourly rate of $44.79. (*Id.* at 5–6.) Using these figures, Defendant calculates the amount in controversy with respect to unpaid wages concerning full-time employees as $994,718.34 (3,102 workweeks x 9 hours of unpaid work x $35.63), part-time employees as $130,330.20 (539 workweeks x 6 hours of unpaid work x $40.30), and per diem employees as $402,930.84 (4,498 workweeks x 2 hours of unpaid work x $44.79). (ECF No. 6 at 17–18.)

---

[1] In reply, Plaintiff argues Tenconi's declaration is self-serving and unreliable for various reasons. (ECF No. 8.) Regardless of whether the Court considers Tenconi's declaration, Defendant's estimates based on the declaration are insufficient to meet the $5 million threshold. As such, the Court assumes without deciding that Tenconi's declaration is competent evidence for the purposes of ruling on this motion.

The Court agrees with Plaintiff that Defendant's estimate for the unpaid wage claims is unreasonable. Defendant calculates the amount in controversy for unpaid wages assuming 9 hours of unpaid wages for each full-time employee each workweek, 6 hours of unpaid wages for each part-time employee each workweek, and 2 hours of unpaid wages for each per diem employee each workweek. Defendant offers no evidence supporting that these violation rates are suitable for calculation purposes for each type of employee. *See Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRX, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019) (finding Defendant cannot "pull violation rates out of thin air, whether it characterizes them as 'conservative' or not, and conclusively state that they are 'reasonable inference[s]' about the most important variables involved in the necessary calculation.") (citing *Ibarra*, 775 F.3d at 1193). For example, Defendant fails to persuade the Court that it should assume 9 hours of unpaid work every week for full-time employees when Plaintiff testified in her deposition that she worked — at most — 7 hours unpaid *some* weeks as a full-time employee. (*See* ECF No. 6-1 at 41 ("I was working about four hours three weekends a month, . . . and I stayed after work anywhere from one to three hours a week.").) Moreover, Defendant wholly fails to explain how it reached the 6 and 2 hours of unpaid work per week it estimated for part-time and per diem employees respectively and fails to justify the use of those violation rates over some other rate.

Without evidentiary support, Defendant's violation rates as to part-time and per diem employees are mere assumptions, seemingly plucked from thin air. Accordingly, the Court finds Defendant's estimates as to unpaid wage claims for part-time and per diem employees to be unreasonable and will not include those estimates in the amount in controversy. As for full-time employees, the Court finds at most an average of 6 hours of unpaid wages per week is reasonable based on Plaintiff's deposition testimony (4 hours on 3 weekends a month plus up to 3 hours a week after work per month). Generously assuming 100% of the full-time employees suffered identical violations, this results in $663,145.56 as a reasonable estimate for the amount in controversy for the unpaid wage claims (3,102 workweeks x 6 hours of unpaid wages per week x $35.63 average hourly rate).

///

In addition, Defendant argues Plaintiff may be entitled to liquidated damages in an amount equal to the wages unlawfully paid pursuant to California Labor Code § 1194.2. (ECF No. 8 at 18.) Plaintiff does not challenge this point other than her challenge to the unpaid wages amount, which the Court has now resolved. Absent argument to the contrary, the Court accepts Defendant's assertion that class members may be entitled to at least $663,145.56 in liquidated damages. Therefore, Defendant has shown up to $1,326,291.12 ($663,145.56 unpaid wages + $663,145.56 liquidated damages) for the total amount in controversy for the unpaid wage claims.

         ii.  *Unpaid Overtime*

Defendant argues Plaintiff's allegations and Tenconi's declaration support the following amounts for the overtime claims: $497,359.17 for full-time therapists (3,102 workweeks x 9 hours of weekly unpaid overtime x $17.82 (half part of time and a half of $35.63 per hour)); $32,582.55 for part-time therapists (539 workweeks x 3 hours of weekly unpaid overtime x $20.15 (half part of time and a half of $40.30 per hour)); and $100,732.71 for per diem therapists (4,498 workweeks x 1 hours of weekly unpaid overtime x $22.395 (half part of time and a half of $44.79 per hour)). (ECF No. 6 at 19.)

As with the unpaid wage claims, Defendant fails to support its estimates for hours of unpaid overtime. While it may be reasonable to assume that all of the full-time employees' unpaid wages were also overtime as those employees worked 40 hours a week, Defendant has not provided any evidence to support its estimates for the part-time or per diem employees. Therefore, the Court will not include Defendant's estimates for the part-time or per diem employees. At most, Defendant has shown that the estimated average of 6 hours of unpaid work done by full-time employees per week translates to overtime, which results in $331,665.84 using Defendant's formula (3,102 workweeks x 6 hours of weekly unpaid overtime x $17.82 (half part of time and a half of $35.63 per hour)).

         iii.  *Unpaid Meal and Rest Break Periods*

Defendant argues Plaintiff's allegations and Tenconi's declaration support the following amounts for meal and rest break periods claims: $331,572.78 in meal break premiums for full-time therapists (3,102 workweeks x 3 weekly meal period violations x $35.63 premium);

1  $43,443.40 in meal break premiums for part-time therapists (539 workweeks x 2 weekly meal
2  period violations x $40.30 premium); $201,465.42 in meal break premiums for per diem
3  therapists (4,498 workweeks x one weekly meal period violation x $44.79 premium);
4  $442,097.04 in rest break premiums for full-time therapists (3,102 workweeks x 4 weekly rest
5  break violations x $35.63 premium; $43,443.40 in rest break premiums for part-time therapists
6  (539 workweeks x 2 weekly rest break violations x $40.30 premium); $402,930.84 in rest break
7  premiums for per diem therapists (4,498 workweeks x two weekly rest break violation each week
8  x $44.79 premium).  Defendant's total for these claims is $1,464,952.84.

9        Defendant fails to provide sufficient evidence to support its estimated amount of meal and
10  rest break violations for every type of employee.  Defendant primarily relies on Plaintiff's
11  deposition testimony, in which Plaintiff stated she was unable to take a rest period "nearly every
12  day" and worked through meal periods "at least one to two times a week."  (ECF No. 6 at 20
13  (citing ECF No. 6-1 at 36, 39).)  Courts in this district have found meal and rest period violation
14  rates between 20% and 60% to be reasonable.  *See Sanchez v. Abbott Lab'ys*, No. 2:20-CV-
15  01436-TLN-AC, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021) (collecting cases and
16  applying a 40% violation rate for meal break claims and 20% violation rate for rest period claims
17  based on the parties' arguments and the allegations in the complaint).  Defendant's rest period
18  violation rates for full-time and part-time employees falls within this range.  Absent evidence to
19  the contrary, the Court finds those estimates to be reasonable and will include $485,540.44 in the
20  amount in controversy.

21        On the other hand, Defendant fails to support its 60% meal break violation rate for full-
22  time employees.  Plaintiff's testimony supports only a 40% meal break violation rate (up to two
23  meal periods in a five-day workweek) for full-time employees.  Using a 40% meal break violation
24  rate, which this Court applied in *Sanchez*, it is reasonable to estimate that Defendant is potentially
25  liable for up to $221,048.52 in meal break premiums for full-time employees (3,102 x 2 weekly
26  meal period violations x $35.63 premium) and $34,754.72 in meal break premiums for part-time
27  employees (539 x 1.6 weekly meal period violations x $40.30 premium).  The Court will thus
28  include $255,803.24 in the amount in controversy.

7

Lastly, Defendant has not provided evidence that per diem employees were entitled to a particular amount of meal or rest periods, and the Court will not include Defendant's estimates as to those claims in the amount in controversy. Therefore, the total for meal and rest period claims based on a reasonable reading of the evidence and Plaintiff's allegations is $741,343.68.

### iv. Remaining Claims

The Court need not and does not address the parties' arguments as to waiting time penalties, inaccurate pay statement claims, or statutory attorney's fees. Even if this Court accepts Defendant's estimates for each of those remaining claims, the aggregate total will not exceed the $5 million threshold. In sum, the aggregate amount of controversy is at most $4,006,103.55 based on the following: $1,326,291.12 (unpaid wages) + $331,665.84 (overtime) + $741,343.68 (meal and rest periods) + $805,582.20 (waiting time penalties and inaccurate pay statements) + $801,220.71 (statutory attorney's fees, 25% of $3,204,882.84, which is the total of the aforementioned claims). Because Defendant has not shown by a preponderance of the evidence the amount in controversy exceeds $5 million, removal was improper. Accordingly, the Court GRANTS Plaintiff's motion and REMANDS this action to state court.

### B.    Attorney's Fees Under 28 U.S.C. § 1447

Plaintiff also argues she is entitled to attorney's fees incurred in bringing this motion. (ECF No. 5-1 at 26.) "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, the Court cannot say that Defendant "lacked an objectively reasonable basis for seeking removal." *Id.* The FAC could have been clearer, and Defendant's arguments regarding violation rates were not completely unfounded. As such, the Court DENIES Plaintiff's request for attorney's fees under 28 U.S.C. § 1447(c).

///

///

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand. (ECF No. 5.) This action is REMANDED to Sacramento County Superior Court. The Court declines to award Plaintiff attorney's fees incurred in bringing her motion.

IT IS SO ORDERED. **DATE: December 14, 2021**

  
  
_____
Troy L. Nunley
United States District Judge